UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES T. MCINTOSH,

                              Plaintiff,

     -v-

UNITED STATES OF AMERICA; MR.
HUFFORD, Warden; MR. ZUK, Chaplain; MR.
DECKER, FSD; MR. GREEN, FSD; MS.
BIANCHI, FS STAFF; 1 to 50 JOHN AND JANE
DOES,

                              Defendants.

No. 15-CV-2442 (KMK)

OPINION & ORDER

Appearances:

Charles T. McIntosh
Janesville, WI
*Pro Se Plaintiff*

Natasha Waglow Teleanu, Esq.
United States Attorney's Office, Southern District of New York
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

     Pro se Plaintiff Charles T. McIntoch ("Plaintiff") filed the instant Complaint against the

United States of America (the "Government"), Warden Howard Hufford ("Hufford"), Chaplain

Richard Zuk ("Zuk"), Food Services Administrator Wayne Decker ("Decker"), Food Services

Administrator Jeffry Green ("Green"), Food Services Staff Gina Bianchi ("Bianchi")

(collectively "Defendants") alleging violations of his constitutional and statutory rights.

Specifically, Plaintiff brings claims under *Bivens v. Six Unknown Named Agents of Federal*

*Bureau of Narcotics*, 403 U.S. 388 (1971), alleging Defendants violated his First, Fifth, Eighth, and Fourteenth Amendment rights; the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. § 2674, *et seq.*; Sections 1985 and 1986 of the Civil Rights Act, 42 U.S.C. §§ 1985 & 1986; the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-1, *et seq.*; and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb, *et seq.* (*See* Compl. 2 (Dkt. No. 1).)[1] Before the Court is the Government's Motion To Dismiss the Amended Complaint (the "Motion") on a variety of grounds, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6). (*See* Mot. To Dismiss ("Mot.") (Dkt. No. 38).) For the following reasons, the Government's Motion is granted.

I. Background

A. Factual Background

The following facts are drawn from the Complaint and are taken as true for the purpose of resolving the instant Motion. At the time of the events described herein, Plaintiff was an inmate at FCI – Otisville in Otisville, New York.[2]

Plaintiff is a member of the Rastafarian faith. (*See* Compl. ¶ 1.) Plaintiff alleges that Defendants violated his constitutional and statutory rights related to practice of his Rastafarian

---

[1] The Complaint lists "1 to 50 John & Jane Does" as Defendants in this Action. As the Court noted in an Order of Service, Plaintiff "does not provide any identifying information about the fifty John and Jane Doe Defendants that he seeks to sue or explain how they were personally involved in what occurred." (*See* Dkt. No. 8.) Plaintiff has never moved to amend the Complaint, identified these Defendants, or otherwise served them. Therefore, the fifty John Doe and Jane Doe Defendants are dismissed from this Action, and the Clerk of Court is directed to amend the caption accordingly.

[2] Plaintiff was incarcerated at FCI – Terre Haute in Terre Haute, Indiana when the Complaint was filed. (*See* Dkt. No. 8.) Plaintiff was released from federal custody on June 2, 2017. (*See* Def.'s Decl. in Supp. of Mot. To Dismiss ("Def.'s Decl.") ¶ 12 (Dkt. No. 40).)

faith by preventing him and other Rastafarian inmates from properly observing the "Rastafarian Ceremonial Meal." (*See id.* ¶¶ 1, 7–10.) The Rastafarian ceremonial meal is "a 'once' per year event" that was scheduled on July 23, 2013. (*See id.* ¶ 11.)[3]

On May 14, 2013, Plaintiff filed a grievance against Defendant Zuk regarding the upcoming ceremonial meal and FCI – Otisville's failure to allow the Rastafarians to freely exercise their religious beliefs, including the requirement that observers fast from sun-up to sun-down prior to the meal and the timing for the feast. (*See id.* ¶ 1.)[4] According to Plaintiff, the "Chaplain['s] department is required to manage the affairs of all religious faiths." (*See id.* ¶ 13.) The chaplain, Defendant Zuk, denied Plaintiff's request for certain ritual objects in preparation for the meal, including Rastafarian music, videos, and oils because they were "not religious Rastafarian items." (*See id.*; *see also id.* ¶¶ 53–54.) Plaintiff alleges the denial of the request was "retaliation . . . based solely on both 'Stuart' and [Plaintiff's] refusal to withdraw the administrative grievances." (*See id.* ¶ 55.)[5] "Most of the Rastafarian community" chose to "boycott[] this most sacread [sic] Holly [sic] event that only comes once a year, because it was

---

[3] Occasional words and phrases in Plaintiff's Complaint are written in all capital letters. Here and elsewhere, when quoting such words phrases, this Opinion reverts to conventional capitalization for ease of readability.

[4] The Complaint contains many allegations regarding Plaintiff's exhaustion of administrative remedies through the prison grievance system. (*See, e.g.*, ¶¶ 31– 48.) Because failure to exhaust under the PLRA is not a ground for dismissal raised by the Government in the Motion, the Court does not recite those facts.

[5] McIntosh refers to conduct against "Plaintiff Stuart," another Rastafarian inmate at FCI – Otisville, frequently in the Complaint. (*See* Compl. at 3, ¶¶ 6, 21, 43, 45, 46–48, 53, 55, 56, 63). "Because Plaintiff Stuart has not signed the Complaint or otherwise manifested any intent to participate in this action," the Court "dismisse[d] him without prejudice from the action" in the Order of Service. (*See* Dkt. No. 8.) Plaintiff and Stuart did not file an amended complaint signed by both parties, so the Court does not consider claims raised by Plaintiff in regard to Defendants' alleged conduct against Stuart.

made clear by the F.C.I. Otisville administration that they inten[d]ed to violate and disrespect the Rastafarian Faith and Practices by forcing us to alter our faith [and] practices." (*See id.* ¶ 24.)

Plaintiff raises numerous complaints regarding events that occurred at the meal on July 23, 2013. First, Plaintiff alleges he was "denied the right to fast from sun-up to sun-down" before the ceremonial meal. (*Id.* ¶ 8; *see also id.* ¶ 10.) It appears the meal took place at 12:30 p.m., rather than after sundown. (*See id.* ¶ 20 (describing events occurring at 12:30 p.m.).) Plaintiff alleges that Defendants violated RLUIPA because "all other religious faiths, [such] as Jew's and Mus[l]im's" are afforded a fasting period before ceremonial meals. (*Id.* ¶ 25.) Second, Plaintiff says he "was denied the right to prayer, to give thanks for our blessings, families, childrern [sic] etc., in the proper Rastafarian practices, and beliefs." (*Id.* ¶ 9.) Specifically, Plaintiff asserts he "was denied the right to bless our ceremonial meal in the proper Rastafarian Religious practices." (*Id.* ¶ 10.) Third, Plaintiff alleges Defendants permitted "unclean and untouchable" non-Rastafarians to prepare, serve, and participate in the meal in violation of ritual purity laws. (*Id.* ¶¶ 14, 58.) The Rastafarian faith provides that "anyone who touches or eats the carcass of an unclean animal becomes unclean." (*Id.* ¶ 14.) Rastafarians consider "pigs/pork" to be "unclean and untouchable." (*Id.*) Anyone outside the Rastafarian faith that eats and touches "pig/pork" are "forbid[d]en to prepa[re], touch, cook [and] serve [the] religious ceremonial meal," or "participate in any Rastafarian Religious Ceremonial meals, and practices." (*Id.*) The Food Services Administration would only allow inmates assigned to Food Service to work in the kitchen to prepare the ceremonial meal. (*See id.* ¶ 4.) As a result, "non-faith members [of] staff made[,] serve[d,] and cooked, [and] prepared" the Rastafarian Ceremonial Meal. (*Id.* ¶ 21.) In particular, according to Plaintiff, Defendants Hufford, Decker, Green, Bianchi, and Zuk "did knowingly and willingly violate[] the Rastafarian religious

ceremonial-meal and religious practices as well as the requirements in having 'unclean-non-faith members' of the Rastafarian laws and religious bele[i]f's and practices."  (*Id.* ¶ 20.)  Fourth, Plaintiff alleges that Defendant Bianchi denied the celebrants "a second serving of our Ceremonial meal" and "ordered the non-faith members [of] staff . . . to take the remaining ceremonial meal off the serving line."  (*Id.* ¶ 21.)  Thus, "[n]o Rastafarian was able to enjoy or rece[i]ved the privil[e]ge of finishing their ceremonial meal, as we was [sic] made to rush so that the kitchen staff could prepare for the evening meal."  (*Id.* ¶ 22.)  According to Plaintiff, the remaining ceremonial meal was served later in the evening as "the Muslims Ramad[a]n meal." (*Id.* ¶ 23.)

Plaintiff also alleges that the Bureau of Prisons' ("BOP") policy regarding Rastafarianism is flawed in various respects.  (*See id.* ¶¶ 26–28.)  For example, the "BOP policy does not state the type of oils used for worship in prayer's," (*id.* ¶ 26), "[n]or[]does it have the religious items needed for the faith and practices," (*id.* ¶ 27), and it "does not state[] the number of days that Rastafarians have to fast before the religious ceremonial meal celebrations," (*id.* ¶ 28).

Finally, Plaintiff alleges that the Defendants are in violation of "the Federal Bureau of Prisons Program Statement OPI:OGC. No. 3420.09 Subject: Standard of Employ[e]e Conduct," specifically, "codes #'s 9-Disrespectful conduct; #28-Preferential treatment of inmates; #35-criminal, dishonest, infamous, and notoriously disgraceful conduct; #36-Conduct which could lead others to question their impartiality; #37-Discrimination in official action against an applicant because of 'race,' 'religion,' sex, 'national origin,' age, handicapping condition, sexual orientation, etc."  (*Id.* ¶ 30.)

As a result of these alleged violations, Plaintiff seeks compensatory damages in the amount of $ 200,000,000.00.  (*See id.* ¶¶ 84–85.)

B.  Procedural History

Plaintiff filed the instant Complaint on March 31, 2015.  (*See* Compl. 1.)  On November 16, 2016, the Government sought an extension of time to respond to the Complaint, noting that it had been served, but Defendants Hufford, Bianchi, Decker, Zuk, and Greene ("Individual Defendants") had not been properly served.  (*See* Dkt. No. 16.)  The Court granted the extension. (*See* Dkt. No. 18.)  On December 9, 2016, the Government requested a premotion conference to file the present Motion.  (*See* Dkt. No. 24.)  The Government also informed the Court that Plaintiff had still not properly served the Individual Defendants.  (*See id.*)  On December 21, 2016, the Court ordered Plaintiff to "properly serve all defendants by 1/20/2017."  (*See* Dkt. No. 26.)

On January 3, 2017, Plaintiff filed a Motion to Stay All Proceedings, (*see* Dkt. No. 27), because he "packed 'all legal' documents/cases and mailed home while [waiting] release from federal prison to the halfway house in Wisconsin."  (*See id.*)

Pursuant to a Scheduling Order issued by the Court on September 6, 2017, (*see* Dkt. No. 37), the Government filed the Motion and accompanying papers on October 10, 2017, (*see* Dkt. Nos. 38–40).  On October 30, 2017, the Government informed the Court that Plaintiff had failed to update his address with the Court and the Motion and accompanying papers could not be served on Plaintiff.  (*See* Dkt. No. 43.)  The Government also informed the Court that Plaintiff had failed to properly serve the Individual Defendants.  (*See id.*)  On November 1, 2017, pursuant to a memo endorsement, the Court instructed Plaintiff to respond to the letter and that if he did not, the Motion would be decided on the papers submitted.  (*See* Dkt. No. 44.)  Plaintiff did not respond.

## II.  Discussion

### A.  Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'" *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)); *see also Neroni v. Coccoma*, No. 13-CV-1340, 2014 WL 2532482, at *4 (N.D.N.Y. June 5, 2014) (same), *aff'd*, 591 F. App'x 28 (2d Cir. 2015).  "In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff."  *Gonzalez*, 2014 WL 2475893, at *2 (internal quotation marks omitted); *see also Seemann v. U.S. Postal Serv.*, No. 11-CV-206, 2012 WL 1999847, at *1 (D. Vt. June 4, 2012) (same).  However, "[o]n a Rule 12(b)(1) motion, . . . the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)."  *Gonzalez*, 2014 WL 2475893, at *2; *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (internal quotation marks omitted)). This difference as to the allocation of the burden of proof is "[t]he only substantive difference" between the standards of review under these two rules.  *Smith v. St. Luke's Roosevelt Hosp.*, No. 08-CV-4710, 2009 WL 2447754, at *9 n.10 (S.D.N.Y. Aug. 11, 2009), *adopted by* 2009 WL 2878093 (S.D.N.Y. Sept. 2, 2009); *see also Fagan v. U.S. Dist. Court for S. Dist. of N.Y.*, 644 F. Supp. 2d 441, 446–47 & n.7 (S.D.N.Y. 2009) (same).

## 1. Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008), *vacated and superseded on reh'g on other grounds*, 585 F.3d 559 (2d Cir. 2009) (en banc)). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (internal quotation marks omitted)).

While a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (alteration, internal quotation marks, and citation omitted); *see also Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 696 (S.D.N.Y. 2014) ("[W]here subject matter jurisdiction is contested a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits.").

## 2. Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B. Analysis

The Government raises five arguments: (1) Plaintiff's constitutional claims against the United States are barred by sovereign immunity; (2) the Court lacks subject matter jurisdiction to entertain an FTCA claim because Plaintiff failed to exhaust his administrative remedies and

never filed an administrative tort claim within the statutory two-year period; (3) Plaintiff's

RLUIPA claim fails to state a claim because RLUIPA does not provide for a cause of action

against the Government; (4) Plaintiff's RFRA claim fails because he seeks only monetary

damages, and RFRA does not provide for monetary damages; and (5) the Court lacks jurisdiction

over Plaintiff's Section 1985 and Section 1986 claims because the United States has not waived

its sovereign immunity for claims brought pursuant to the Civil Rights Act.  (Def.'s Mem. of

Law in Supp. of Mot. To Dismiss ("Def.'s Mem.") 12 (Dkt. No. 39).)  The Court will address

each in turn.

### 1.  Constitutional and FTCA Claims

Plaintiff brings claims under the First, Fifth, Eighth, and Fourteenth Amendments and the

"Tort Claims Act," naming the United States of America as a Defendant, (*see* Compl. 1), and,

further, specifies that he brings suit against "the above Defendant(s) . . . acting in their own

individual capacity but under color of federal authority, and under their official capacity under

color of federal authority," (*id.* at 2).  The Government, however, argues that (1) it has not

waived sovereign immunity for constitutional torts; (2) Plaintiff's claims against the Individual

Defendants in their official capacities are also considered suits against the Government barred by

sovereign immunity; and (3) to the extent that Plaintiff tries to allege a tort claim, it fails for

failure to exhaust his administrative remedies under the Federal Tort Claims Act ("FTCA").

(*See* Def.'s Mem. 12.)

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies

from suit."  *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999) (internal quotation

marks omitted); *see also Diaz v. United States*, 517 F.3d 608, 611 (2d Cir. 2008) (same).  "The

waiver of sovereign immunity is a prerequisite to subject matter jurisdiction."  *Presidential*

*Gardens Assocs. v. U.S. ex rel. Sec. of Hous. & Urban Dev.*, 175 F.3d 132, 139 (2d Cir. 1999).

Thus, "[t]o establish that subject matter jurisdiction exists for a suit, Plaintiff must identify an

applicable waiver of the Government's sovereign immunity; otherwise, the Court must dismiss

the suit, pursuant to Rule 12(b)(1)." *De Masi v. Schumer*, 608 F. Supp. 2d 516, 524 (S.D.N.Y.

2009) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "[W]aivers of

sovereign immunity must be 'unequivocally expressed' in statutory text, and cannot simply be

implied." *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) (quoting *United States v.*

*Nordic Vill., Inc.*, 503 U.S. 30, 33 (1992)). Moreover, a plaintiff bears the burden to demonstrate

that sovereign immunity has been waived. *See Makarova*, 201 F.3d at 113 ("[T]he plaintiff bears

the burden of establishing that [his or] her claims fall within an applicable waiver.").

The FTCA is a "limited waiver by the United States of its sovereign immunity and allows

for a tort suit against the United States under specified circumstances." *Liranzo v. United States*,

690 F.3d 78, 85 (2d Cir. 2012) (quoting *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir.

2007)); *see also Regnante v. Sec. & Exch. Officials*, No. 14-CV-4880, 2015 WL 5692174, at *13

(S.D.N.Y. Sept. 28, 2015) (same). The FTCA waives sovereign immunity only for:

> claims against the United States, for money damages . . . for injury or loss of
> property, or personal injury or death caused by the negligent or wrongful act or
> omission of any employee of the Government while acting within the scope of his
> office or employment, under circumstances where the United States, if a private
> person, would be liable to the claimant in accordance with the law of the place
> where the act or omission occurred.

28 U.S.C. § 1346(b)(1). The FTCA does not waive the United States' sovereign immunity for

constitutional torts. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994) ("By definition, federal

law, not state law, provides the source of liability for a claim alleging the deprivation of a federal

constitutional right . . . . [And] the United States simply has not rendered itself liable under [the

FTCA] for constitutional tort claims."). Additionally, "[t]he United States has not waived its

sovereign immunity with respect to claims that its employees have committed constitutional torts." *Alston v. Sebelius*, No. 13-CV-4537, 2014 WL 4374644, at *8 (E.D.N.Y. Sept. 2, 2014) (quoting *Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994)). Accordingly, "*Bivens* claims do not lie against federal employees in their official capacities, because such suits are considered actions against the United States, and are barred by the doctrine of sovereign immunity." *Wright v. Condit*, No. 13-CV-2849, 2015 WL 708607, at *1 (S.D.N.Y. Feb. 18, 2015) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994)); *see also Gonzalez v. Shahnoon*, No. 15-CV-2961, 2015 WL 6118528, at *4 (E.D.N.Y. Oct. 16, 2015) ("*Bivens* claims against federal officials in their official capacity are barred by the sovereign immunity doctrine."). Therefore, to the extent that Plaintiff (1) brings a tort claim against the Government directly for violations of the First, Fifth, Eighth, and Fourteenth Amendments or (2) a *Bivens* claim against the Individual Defendants in their official capacities for violations of the First, Fifth, Eighth, and Fourteenth Amendments, his claims are barred by the doctrine of sovereign immunity and must therefore be dismissed.

Plaintiff does not explain in any detail what his "tort claim" against the Defendants is. Even if the Court were to attempt liberally construe one, because Plaintiff has not exhausted any such claim, it fails. An FTCA action "against the United States is the exclusive remedy for a suit for damages for injury resulting from the negligent or wrongful act or omissions of any employee of the Government while acting within the scope of his office or employment." *Bearam v. Sommer*, No. 12-CV-1858, 2013 WL 5405492, at *8 (S.D.N.Y. Sept. 25, 2013) (internal quotation marks omitted) (citing, inter alia, 28 U.S.C. § 2679(b)(1)); *see also Finley v. Hersh*, No. 12-CV-162, 2013 WL 3450270, at *7 (D. Vt. July 9, 2013) ("As to [the plaintiff's] tort claims, his exclusive remedy for monetary damages against the United States is under the

Federal Tort Claims Act.").  When bringing an FTCA claim, plaintiffs are required to first

exhaust their administrative remedies.  *See Celestine v. Mount Vernon Neighborhood Health

Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) ("The FTCA requires that a claimant exhaust all

administrative remedies before filing a complaint in federal district court."); *Morrow v. Dupont*,

No. 08-CV-3083, 2010 WL 1005856, at *3 (E.D.N.Y. Mar. 15, 2010) (same); *see also* 28 U.S.C.

§ 2675(a) ("An action shall not be instituted upon a claim against the United States for money

damages for . . . personal injury . . . caused by the negligent or wrongful act or omission of any

employee of the Government while acting within the scope of his office or employment, unless

the claimant shall have first presented the claim to the appropriate Federal agency and his claim

shall have been finally denied by the agency in writing and sent by certified or registered mail.").

The FTCA's exhaustion requirement is "jurisdictional and cannot be waived."  *Celestine*, 403

F.3d at 82; *see also Bastien v. Samuels*, No. 14-CV-1561, 2015 WL 5008837, at *2 (E.D.N.Y.

Aug. 21, 2015) (same); *R.C.L. Infant v. Bronx-Lebanon Hosp. Ctr.*, No. 13-CV-6764, 2015 WL

1499745, at *4 (S.D.N.Y. Mar. 31, 2015) (same).[6]  "The plaintiff bears the burden of pleading

---

[6] The Supreme Court has recently held that the FTCA's time limits for filing an administrative claim and bringing suit in federal court are not jurisdictional.  *See United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1638 (2015) ("[W]e hold that the FTCA's time bars are nonjurisdictional and subject to equitable tolling.").  However, "the Court's opinion did not address—and therefore did not disturb—the well-established principle that . . . exhaustion of administrative remedies[] [is] jurisdictional in nature, and [is] not subject to waiver . . . ." *Mohamed v. F.B.I.*, No. 14-CV-7615, 2015 WL 6437369, at *6 (S.D.N.Y. Oct. 21, 2015); *see also Barnhill v. Terrell*, 616 F. App'x 23, 25 & n.1 (2d Cir. 2015) (concluding that "[the plaintiff] failed to exhaust his administrative remedies, and that [the district court] accordingly lacked jurisdiction to hear his FTCA claims," but noting that in *Kwai Fun Wong*, "the U.S. Supreme Court ruled that time limitations under the FTCA are nonjurisdictional and subject to equitable tolling"); *cf. Ortega v. Colvin*, No. 13-CV-3487, 2015 WL 6143591, at *4 (E.D.N.Y. Oct. 19, 2015) (noting the holding in *Kwai Fun Wong*, but also indicating that "[t]he administrative exhaustion requirement [of the FTCA] derives from a cardinal principle of law— that the United States, as sovereign, is immune from suits in the courts of law," and that "[s]overeign immunity creates a jurisdictional bar to suit" (internal quotation marks omitted)).

compliance with the FTCA's exhaustion requirement." *Sherman-Amin-Braddox:Bey v. McNeil*, No. 10-CV-5340, 2011 WL 795855, at *2 (E.D.N.Y. Feb. 25, 2011) (citing *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987)); *accord Foster v. Fed. Emergency Mgmt. Agency*, No. 14-CV-1750, 2015 WL 5430370, at *10 (E.D.N.Y. Sept. 15, 2015) (same); *Bastien*, 2015 WL 5008837, at *5 (same); *see also Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) ("The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."). "With respect to claims against the BOP, the FTCA requires that an inmate mail or deliver his or her claim to the BOP's Regional Office, and then to appeal an adverse decision in writing to the BOP prior to filing suit in U.S. District Court." *Lockwood v. Fed. Bureau of Prisons*, No. 13-CV-8104, 2015 WL 4461597, at *2 (S.D.N.Y. July 21, 2015) (citing 28 C.F.R. §§ 543.31(c), 543.32(g)).

Here, Plaintiff has not attempted to plead or argue that he complied with the FTCA's exhaustion requirement.[7] The Court simply does not have jurisdiction to entertain Plaintiff's FTCA claim, to the extent one even is to be found in the Amended Complaint. *See Sherman-Amin-Braddox:Bey*, 2011 WL 795855, at *2 (noting that "[t]he plaintiff bears the burden of pleading compliance with the FTCA's exhaustion requirement"). However, Plaintiff's FTCA

---

[7] Nor would it be an answer (to the extent that it is even true) that Plaintiff exhausted his remedies under the Prison Litigation Reform Act ("PLRA"), which Plaintiff attempts to plead. (*See* Compl. ¶¶ 31–48.) "The exhaustion procedures under the two statutes differ, and the fulfillment of one does not constitute satisfaction of the other." *Owusu v. Fed. Bureau of Prisons*, No. 02-CV-915, 2003 WL 68031, at *2 (S.D.N.Y. Jan. 7, 2003) (footnote omitted); *see also Ward v. Ives*, No. 11-CV-1657, 2014 WL 4417764, at *6 (E.D. Cal. Sept. 4, 2014) ("Prison grievances are not sufficient to exhaust administrative remedies under the FTCA because exhaustion requirements for administrative remedies through the BOP's inmate grievance system differ from the exhaustion requirements for filing a claim under the FTCA." (alterations and internal quotation marks omitted)), *adopted by* 2014 WL 4929454 (E.D. Cal. Sept. 30, 2014); *Robinson v. United States*, No. 13-CV-1106, 2014 WL 2940454, at *6 (M.D. Pa. June 30, 2014) ("[A]n inmate may not rely upon the submission of prison grievances to satisfy his separate and independent exhaustion requirement under the FTCA.")

claims are dismissed without prejudice, and Plaintiff is granted leave to file an Amended

Complaint within 20 days of this Opinion.[8]  Consequently, if Plaintiff has exhausted his

administrative remedies pursuant to the FTCA by that time, he may assert his FTCA claim in his

Amended Complaint.  *See Vitrano v. United States*, No. 06-CV-6518, 2008 WL 1752221, at *4

(S.D.N.Y. Apr. 16, 2008) ("When and if [the plaintiff] is able to plead satisfaction of

jurisdictional prerequisites [of his FTCA claim], he will be entitled to assert these claims either

by amending his complaint here or by filing a new action.").  To the extent that Plaintiff has

exhausted such remedies but his FTCA claim is nonetheless untimely, *see* 28 U.S.C. § 2401(b),

he is free to allege facts sufficient to argue that that untimeliness should be forgiven under the

doctrine of equitable tolling, *see Palmer-Williams v. United States*, No. 14-CV-9260, 2016 WL

676465, at *3 (S.D.N.Y. Feb. 18, 2016) (noting that "the U.S. Supreme Court recently ruled that

time limitations under the FTCA are nonjurisdictional and therefore subject to equitable tolling"

(citing *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1633 (2015))).

### 2.  RLUIPA Claims

Plaintiff alleges his right to exercise his religion pursuant to RLUIPA has been violated.

(*See* Compl. ¶ 29.)  The Government moves to dismiss this claim on the grounds that RLUPIA

does not create a cause of action against the United States.  (*See* Def.'s Mem. 15–16.)

---

[8] The Government submits a declaration that a review of the database of administrative tort claims filed with BOP indicates that Plaintiff did not file a timely administrative tort claim related to the claims raised in the instant Complaint.  (*See* Def.'s Mem. Law 14; Def.'s Decl. ¶ 9–10 & Ex. E.)  While the Court can refer "to evidence outside the pleadings, such as affidavits," *Tandon*, 752 F.3d at 243, and exhibits, *Ray Legal*, 37 F. Supp. 3d at 696, in deciding whether it has subject matter jurisdiction, the Court will nonetheless grant Plaintiff the opportunity to amend the Complaint, since better pleading could potentially cure this defect.  *Cf. Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

"Congress enacted RLUIPA as an amendment to RFRA in light of the Supreme Court's decision in *City of Boerne*, 521 U.S. 507, which held that RFRA was unconstitutional as applied to the states." *Sabir v. Williams*, No. 17-CV-749, 2017 WL 6514694, at *6 (D. Conn. Dec. 19, 2017) (citing *Holt v. Hobbs*, 135 S. Ct. 853, 860 (2015).) RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in [§] 1997 of [Title 42], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). RLUPIA's definition of "government" includes any "State, county, municipality, or other governmental entity created under the authority of a State," "any branch, department, agency, instrumentality, or official" thereof, and "any other person acting under color of State law." *Id.* § 2000cc-5(4)(A). Section 1997 defines an institution as a facility or institution that, among other things, "is owned, operated, or managed by, or provides services on behalf of any State or political subdivision of a State." *Id.* § 1997(1)(A). A "State" means "any of the several States, the District of Columbia, the Commonwealth of Puerto Rico, or any of the territories and possessions of the United States." *Id.* § 1997(4). Accordingly, RLUIPA "only applies to state and local governments, not a federal prison." *Pineda-Morales v. DeRosa*, 03-CV-4297, 2005 WL 1607276, at *4 (D. N.J. Jul. 6, 2005); *see also Ish Yerushalayim v. United States*, 374 F.3d 89, 92 (2d Cir. 2004) ("Because RLUIPA clearly does not create a cause of action against the federal government or its correctional facilities, [the plaintiff] has no RLUIPA cause of action."). Plaintiff therefore has no cause of action against the United States under RLUIPA.

### 3. RFRA

Plaintiff also alleges his right to exercise his religion pursuant to the RFRA has been violated. (*See* Compl. ¶¶ 29, 82.) The Government moves to dismiss this claim on the ground that RFRA does not provide for monetary damages, (*See* Def.'s Mem. 16–17), which is the only relief Plaintiff seeks in this case, (*See* Compl. ¶¶ 82–85).

Similar to RULIPA, RFRA provides that "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless "it demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a–b). "[T]he Supreme Court has acknowledged the availability of injunctive relief under RFRA." *Tanvir v. Lynch*, 128 F. Supp. 3d 756, 775 (S.D.N.Y. 2015) (citing G*onzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 425–30 (2006)), *appeal docketed*, No. 16-1176 (2d Cir. Apr. 18, 2016). However, "neither the Supreme Court nor any of the thirteen courts of appeals has held that RFRA provides for money damages." *Id.* Indeed, several circuit courts, as well as other district courts in the Second Circuit, have held that RFRA did not waive sovereign immunity for money damages against the United States or its agents acting in their official capacity. *See, e.g.*, *Davila v. Gladden*, 777 F.3d 1198, 1210 (11th Cir. 2015) (holding RFRA does not provide for suits for money damages against the United States or its agents acting in their official capacity); *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 841 (9th Cir. 2012) (same); *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006) (same); *Tanvir*, 128 F. Supp. 3d at 780 (holding RFRA does not provide for money damages against federal officials in their official or personal capacity); *see also Sossamon v. Texas*, 563 U.S. 277, 288 (2011)

(holding RLUIPA does not provide for suits for money damages against a state). Keeping with these decisions, the Court holds that Plaintiff's RFRA claim fails because RFRA did not waive sovereign immunity for money damages against the United States or its agents acting in their official capacity.

Even if Plaintiff's claim could be construed as seeking injunctive relief, any claim for such relief is moot.[9] Plaintiff was transferred from FCI – Otisville to FCI – Terre Haute sometime between the actions alleged in the Complaint and the filing of the Complaint. (Dkt. No. 6 (listing FCI – Terre Haute as Plaintiff's place of incarceration at the time the Complaint was filed).) Additionally, Plaintiff was released from BOP custody on June 2, 2017. (*See* Def.'s Decl. ¶ 12.) "It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility." *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996); *see also Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."); *McAlpine v. Thompson*, 187 F.3d 1213, 1218 (10th Cir. 1999) (noting that eight other "circuit[s that have] consider[ed] the issue ha[ve] decided that release to parole moots a claim regarding prison conditions and regulations" and so holding) (italics omitted). Accordingly, any claim for injunctive relief is moot.

---

[9] Plaintiff mentions "injunctive relief" once in the complaint, as part of a citation to a somewhat unclear statement relating to the statute of limitations in the context of his conspiracy claims, noting "[t]here is an exception to a general rule for cases where Plaintiff(s) seek injunctive relief . . . A violation is called 'continuing' signifying that a plaintiff can reach back to its begin[n]ing even if that begin[n]ing lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue sep[a]r[]atl[e]y over every incident of the defend[a]n[]ts unlawful conduct." (Compl. ¶ 80.)

4.  Section 1985 and Section 1986 Claims

Plaintiff also asserts claims for conspiracy to interfere with civil rights and neglect to prevent conspiracy, pursuant to 42 U.S.C. §§ 1985 and 1986.  (*See* Compl. ¶¶ 79–80, 83.)  The Government moves to dismiss these claims on the grounds that the Court lacks jurisdiction over these claims, because the United States has not waived sovereign immunity for claims brought pursuant to 42 U.S.C. §§ 1985 and 1986.  (*See* Def.'s Mem. at 18.)  The Court agrees that it lacks jurisdiction to hear §§ 1985 and 1986 claims against the United States and the Defendants sued in their official capacity, as §§ 1985 and 1986 are "inapplicable to the federal government." *Murray v. Lakeland Cent. Sch. Dist. Bd. of Educ.*, No. 16-CV-6795, 2017 WL 4286658, at *7 (S.D.N.Y. Sept. 26, 2017); *see also Haynes v. Quality Mkts.*, 307 F. App'x 473, 475 (2d Cir. 2008) ("[T]he United States has not waived sovereign immunity for claims . . . brought pursuant to 42 U.S.C. §§ 1985 and 1986."); *Harrison v. Potter*, 323 F. Supp. 2d 593, 604–05 (S.D.N.Y. 2004) (holding that § 1985 "do[es] not provide a remedy against the federal government" and "[b]ecause the United States has not waived its sovereign immunity for constitutional tort claims under the Civil Rights Act, this [c]ourt dismisses [the plaintiff's] §§ 1981, 1983, and 1985 claims for lack of subject matter jurisdiction"); *Raghavendra v. NLRB*, No. 08-CV-8120, 2009 WL 5908013, at *9 (S.D.N.Y. Aug. 27, 2009) ("[T]he civil rights statutes do not unequivocally express the federal government's consent to be sued and, thus, do not waive its sovereign immunity.").  Accordingly, Plaintiff's §§ 1985 and 1986 claims are dismissed.

C.  Dismissal Without Prejudice

A complaint should be dismissed without prejudice if the pleading, "'liberally read,' suggests that the plaintiff has a claim that he has inadequately or inartfully pleaded and that he should therefore be given a chance to reframe."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.

2000) (alterations and citation omitted) (quoting *Gomez v. USAA Fed Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). If a complaint, however, has substantive problems and "[a] better pleading will not cure [them]" repleading may be "futile." *Id.* (citing *Hunt v. All N. Am. Gov't Income Tr.*, 159 F.3d 723, 728 (2d Cir. 1998)).

Here, despite failing to oppose the Motion, Plaintiff has nevertheless not been afforded an opportunity to amend his Complaint. Regarding the FTCA claims only, there is reason to suspect that, if given an opportunity to amend, Plaintiff might be able to cure the substantive deficiencies in his Complaint. Therefore, Plaintiff's FTCA claims are dismissed without prejudice. The remainder of Plaintiff's dismissed claims against the Government are dismissed with prejudice.

### III. Conclusion

For the reasons discussed herein, the Government's Motion To Dismiss is granted. Plaintiff's FTCA claims are dismissed without prejudice, and all other claims against the Government are dismissed with prejudice. If Plaintiff wishes to file an Amended Complaint, he must do so within 20 days of the date of this Opinion & Order. Failure to do so might result in dismissal of this case. Plaintiff should include within that Amended Complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. The Amended Complaint will replace, not supplement, the original complaint. The Amended Complaint must contain *all* of the claims and factual allegations the Plaintiff wishes the Court to consider.

The Clerk of the Court is to terminate the pending motion, (Dkt. No. 38), and mail a copy

of this Opinion and Order to Plaintiff.

SO ORDERED.

DATED:     March __7__, 2018
           White Plains, New York


KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

22